Filed 1/13/25  P. v. Rodriguez CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br><br>v.<br><br>SAMANTHA RODRIGUEZ,<br><br><br>Defendant and Appellant. | B328706<br><br>(Los Angeles County<br>Super. Ct. No. PA070627)<br><br>ORDER MODIFYING<br>OPINION<br><br>[NO CHANGE IN<br>JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on December 19, 2024 be modified as follows:

On page 18, under the heading DISPOSITION, the signature block was previously listed  as:  COLLINS, J., CURREY, P.J. and MORI, J.

The opinion is to be modified so that the signature block now reads as follows: COLLINS, ACTING P.J., MORI, J., and ZUKIN, J.

_____

COLLINS, ACTING P.J.        MORI, J.                ZUKIN, J.

Filed 12/19/24  P. v. Rodriguez CA2/4 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SAMANTHA RODRIGUEZ,<br><br>    Defendant and Appellant. | B328706<br><br>(Los Angeles County<br>Super. Ct. No. PA070627 |

APPEAL from an order of the Superior Court of Los Angeles County, Hilleri G. Merritt, Judge.  Affirmed.

Stanley D. Radtke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Samantha Rodriguez appeals the denial of her petition for resentencing under Penal Code section 1172.6[1] at the prima facie stage. She contends the trial court erred in its application of the law of the case doctrine, and that her conviction for conspiracy to commit murder does not render her ineligible for relief on her convictions for attempted murder. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Charges and Convictions

An amended information filed March 20, 2012 charged appellant and codefendants Horacio Gonzalez, Cristian Adame, and Myra Rangel with conspiracy to commit murder (§§ 182, subd. (a)(1), 187, subd. (a), count 1); the attempted willful, deliberate, and premeditated murders of Sergio Abrego and Miguel Castro (§§ 187, subd. (a), 664, count 2); and shooting at an occupied motor vehicle (§ 246, count 3).[2] The amended information alleged that the offenses were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)) and that a principal—Gonzalez and Adame—personally used and discharged a firearm causing great bodily injury (§ 12022.53, subds. (b), (c), (d), (e)(1)).

---

[1] Appellant filed her petition under former Penal Code section 1170.95, which was renumbered to section 1172.6 effective June 30, 2022 with no change in text. (Stats. 2022, ch. 58, § 10.) All further undesignated statutory references are to the Penal Code.

[2] The amended information also charged codefendants Gonzalez and Adame with numerous additional crimes, including murder and attempted murder, stemming from other shooting incidents. Appellant and Rangel were charged only with the four crimes and related enhancements stated here.

Appellant and her codefendants were tried jointly. It is undisputed[3] that, at the trial, evidence was adduced that Gonzalez and Adame were gang members with whom appellant and Rangel associated. On or about March 15, 2010, appellant and Rangel telephoned a rival gang member, Abrego. Posing as an acquaintance of Abrego's, appellant and Rangel invited Abrego to meet them to "party." An uncharged gang member drove appellant and Rangel to the meeting location—an intersection— and Gonzalez and Adame traveled there in a separate vehicle. Appellant and Rangel called Abrego multiple times as they traveled to and waited at the meeting location. When Abrego and his friend Castro approached the meeting location in Abrego's van, Gonzalez and Adame repeatedly shot into the van. Abrego was injured and the van was disabled; Castro was unhurt. Police later recovered 18 shell casings from two different guns and one slug at the scene. It is undisputed that appellant was not one of the shooters.

As discussed more fully below, the trial court instructed the jury[4] on conspiracy, direct aiding and abetting, and the natural

---

[3]     Both parties draw their factual summaries from the unpublished opinion in appellant's and her codefendants' direct appeal, *People v. Gonzalez* (Oct. 26, 2015, No. B249598) [nonpub. opn.] (*Gonzalez*). We refer to *Gonzalez* only "for background purposes and to provide context for the parties' arguments." (*People v. Flores* (2022) 76 Cal.App.5th 974, 978, fn. 2.) We do not rely on the facts in *Gonzalez* to review the trial court's determination of appellant's eligibility for resentencing at the prima facie stage. (*Id.* at p. 988.)

[4]     The People requested that the trial court take judicial notice of the record from appellant's direct appeal, including the

and probable consequences doctrine.  The prosecutor argued all three theories during closing argument.  The prosecutor also emphasized that a key distinction among the theories was whether each defendant "actually had an agreement to go kill." She argued, "if you do not believe that one or some of them were involved in the conspiracy, then for those people that you don't believe actually had an agreement to go kill, you don't find count 1."  As to appellant specifically, the prosecutor argued she was guilty either due to her own intent to kill or her intent to aid and abet Gonzalez and Adame.

The jury found appellant guilty of all the charges against her, including conspiracy to commit murder.  It also found the enhancement allegations true and found that both attempted murders were committed willfully, deliberately, and with premeditation.  The trial court sentenced appellant to 25 years to life on the conspiracy count, plus a consecutive term of 25 years to life for the related firearm enhancement and another consecutive term of 25 years to life for the attempted willful, deliberate, and premeditated murder of Castro.  The court imposed and stayed sentence on all other counts and enhancements.  Rangel was convicted of the same crimes and received an identical sentence.

clerk's and reporter's transcripts.  Appellant also provided the court with selected jury instructions and excerpts from the reporter's transcript.  As the People point out in their unopposed request for judicial notice of the record from appellant's direct appeal, the trial court did not address their request for judicial notice below.  We grant the current request for judicial notice. (Evid. Code, §§ 452, subd. (d), 459.)

4

## II.   Direct Appeal

Appellant and her codefendants appealed. A different panel of this court affirmed their convictions in an omnibus unpublished opinion. (See *Gonzalez*, *supra*.) As relevant here, appellant argued that the trial court improperly instructed the jury on the natural and probable consequences doctrine. She contended that the instructions "permitted the jurors to . . . convict appellant for the natural and probable consequences of an offense she didn't aid and abet," a beating.

In rejecting this argument, the appellate court noted that the natural and probable consequences instruction erroneously stated that conspiracy to commit murder could be a natural and probable consequence of assault likely to produce great bodily injury. The court found the error harmless, however. It stated: "The error here was cured by the court's proper instruction that the conspiracy count required the People to prove defendants agreed and intended to 'intentionally and unlawfully kill' and 'had an agreement and intent to commit murder.' Additionally, the People repeatedly invited the jury to acquit Rodriguez and Rangel on the conspiracy count if it applied the natural and probable consequences doctrine. The jury's guilty verdict on the conspiracy count—and its findings that the attempted murders were willful and premeditated and not simply an escalated consequence of a target offense—indicates that it rejected the natural and probable consequences theory in favor of the People's lead theory of direct aiding and abetting."

## III.   Section 1172.6 Proceedings

Appellant filed a section 1172.6 petition for resentencing on June 23, 2022. The trial court appointed counsel for her and ordered the People to file a response. In that response, filed

5

October 13, 2022, the People argued that appellant was ineligible for relief as a matter of law. They argued that the conviction for conspiracy to commit murder was outside the ambit of section 1172.6, and relief was not available on the attempted murder convictions because they rested on either a conspiracy or direct aiding and abetting theory.

To support the latter argument, the People provided the trial court with a copy of *People v. Rangel* (May 18, 2022, No. B302169) [nonpub. opn.] (*Rangel*), in which a different panel of this court found codefendant Rangel ineligible for section 1172.6 relief as a matter of law. In *Rangel,* the court found that the portion of the *Gonzalez* opinion quoted above foreclosed relief under section 1172.6. Applying the law of the case doctrine, it reasoned that the *Gonzalez* court's legal conclusion that the jury rejected the natural and probable consequences theory in favor of the direct aiding and abetting theory was essential to the holding. (See *Rangel*, *supra*.) The court continued, "Because the record of conviction establishes that appellant was convicted of attempted murder and conspiracy to commit murder under a direct aiding and abetting theory, she is ineligible for relief under section 1170.95." (*Ibid.*)

In her reply in support of her petition, appellant asserted that the trial court could not consider *Rangel* because it was unpublished, was not part of appellant's record of conviction, and was not law of the case due to a lack of privity between appellant and Rangel. She further argued that she met the prima facie standard because her jury was instructed with the natural and probable consequences doctrine, and "there is no way to determine from the record of conviction which theory or theories of murder [*sic*] and attempted murder culpability the jury based

6

its conviction." Appellant also argued that she made a prima facie case because her jury was instructed on the kill zone theory, "which imputed malice to petitioner as an aider and abettor." She attached transcripts of some oral instructions her jury received, as well as excerpts from the prosecutor's closing argument regarding the natural and probable consequences doctrine.

The trial court heard the matter on February 6, 2023. The court asked appellant's counsel if the findings that the attempted murders were willful, deliberate, and premeditated foreclosed relief. Counsel argued that they did not, because there was still a possibility that the jury applied the natural and probable consequences theory. Counsel also reiterated his arguments about the kill zone and lack of privity required to apply the law of the case doctrine; he asserted that "[w]hatever happened in *Rangel* is not binding to [*sic*] the court." The prosecutor responded that law of the case applied "not just because it was with regard to Ms. Rangel, but because it was with regard to the actions in this particular case."

The trial court stated, "While I agree with you, the law of the case with Ms. Rangel is not in and of itself binding upon Ms. Rodriguez, if the analysis is similar, I don't want to put form over substance." The trial court then summarized the pertinent portion of *Rangel* and explained that "the record of conviction establishes the appellant, granted it was Ms. Rangel, but we also have Ms. Rodriguez also [*sic*] convicted of attempted murder, conspiracy to commit murder under a direct aiding and abetting theory, and they had earlier, on the same page, indicated that the jury's guilty verdict on the conspiracy count and its finding that attempted murders were willful, premeditated doesn't - - it's not

7

a consequence of a target offense.  It indicates the jury rejected the natural and probable consequences theory in favor of the People's lead theory of direct aiding and abetting.  Without the appellate court having spoken so concisely and clearly on this issue, I think you would have actually made the prima facie case because I'm not supposed to do fact-finding at this juncture.  I'm not.  I'm allowed to rely on the prima facie case on appellate decisions.  I agree that while Ms. Rangel is not Ms. Rodriguez, they were convicted of the same counts with the same analysis that I believe is applicable.  So it seems to me that based on that, the prima facie case has not been shown, and I'm making a very thorough record here so that should someone be reviewing this, they will know what my thought process was."  The court then found there was no prima facie case and denied the petition.

Appellant timely appealed.

## DISCUSSION

Effective January 1, 2019, the Legislature amended "'the felony murder rule and natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*People v. Lewis* (2021) 11 Cal.5th 952, 959, quoting Stats. 2018, ch. 1015, § 1, subd. (f) (*Lewis*).)  These changes mean that "a defendant cannot be convicted of murder based on the doctrine of natural and probable consequences, even with a showing of malice aforethought.  [Citation.]  It is an invalid theory.  Murder liability requires a different, valid theory, such as direct aiding and abetting." (*People v. Curiel* (2023) 15 Cal.5th 433, 462 (*Curiel*).)  The same is true of attempted murder.  (See § 1172.6,

8

subd. (a); *People v. Coley* (2022) 77 Cal.App.5th 539, 548.) Someone who was convicted of murder or attempted murder under a now-invalid theory may seek relief by filing a petition under section 1172.6.  (See *Lewis, supra,* 11 Cal.5th at p. 959.) A conviction for conspiracy to commit murder is outside the scope of the statute.  (*People v. Whitson* (2022) 79 Cal.App.5th 22, 34-36 (*Whitson*); see also § 1172.6.)

Section 1172.6 does not open resentencing to every defendant convicted of murder or attempted murder.  (*People v. Strong* (2022) 13 Cal.5th 698, 715 (*Strong*); accord, *Curiel, supra,* 15 Cal.5th at p. 460.)  Relief "is unavailable if the defendant was either the actual killer, acted with the intent to kill, or 'was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] Section 190.2.'"  (*Strong, supra,* at p. 710.) A defendant seeking relief must make a prima facie showing of entitlement to relief.  (§ 1172.6, subd. (c).)  The bar for this showing is very low.  (*Lewis, supra,* 11 Cal.5th at p. 972.)  The trial court must accept as true the petitioner's allegation that he or she could not currently be convicted unless that allegation is refuted by the record of conviction.  (*Curiel, supra,* 15 Cal.5th at p. 463.)

"'The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless.  This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process.'"  (*Curiel, supra,* 15 Cal.5th at pp.

9

463-464, quoting *Lewis*, *supra*, 11 Cal.5th at p. 971.) The record of conviction generally includes appellate opinions (*Lewis*, *supra*, 11 Cal.5th at p. 972), and the court may consider the procedural history of the case recited therein, though not the factual summary. (§ 1172.6, subd. (d)(3); *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1237-1238.) The court also may consider relevant jury findings, which generally have preclusive effect under the doctrine of issue preclusion. (*Curiel*, *supra*, 15 Cal.5th at pp. 453-454.)

The law of the case doctrine is "related" to issue preclusion, though it "has to do with the *legal principles* governing a particular case in subsequent proceedings following an appeal." (*People v. Beaudreaux*, *supra*, 100 Cal.App.5th at p. 1240, fn. 4, emphasis in original.) It provides that "a principle or rule that a reviewing court states in an opinion and that is necessary to the reviewing court's decision must be applied throughout all later proceedings in the same case, both in the trial court and on a later appeal." (*People v. Jurado* (2006) 38 Cal.4th 72, 94.) Law of the case is applied "even in death penalty cases, and even where the previous decision was rendered by a Court of Appeal, but we do not apply it when an intervening decision has altered or clarified the controlling rules of law, or when the rule stated in the prior decision was a "'manifest misapplication" of the law resulting in "substantial injustice."'" (*Ibid.*)

Appellant contends the trial court erred in denying her petition because it "merely adopted the decision of a separate co-defendant's appellate opinion, which upheld the conviction on direct appeal by resolving disputed facts and exercising discretion on direct appeal." She further contends "this reliance by the trial court upon a nonpublished opinion of a separate co-defendant

10

referencing another previous nonpublished opinion was error because it is improper to rely on the statement of facts from a prior appellate opinion [let alone an unrelated appellate opinion] to determine the true facts of the case." Appellant also cites *People v. Harden* (2022) 81 Cal.App.5th 45, 50 (*Harden*) for the proposition that the law of the case doctrine can never be used to deny a section 1172.6 petition at the prima facie stage. We review the trial court's ruling de novo. (*People v. Muhammad* (December 9, 2024, B334294) ___Cal.App.5th ___, ___.)

The trial court was permitted to consider the "procedural history" of the case as set forth in the direct appellate opinion, *Gonzalez*. Although captioned with the name of appellant's codefendant, the *Gonzalez* opinion resolved appellant's direct appeal and was not merely "a separate co-defendant's appellate opinion, which upheld the conviction on direct appeal." It is part of appellant's record of conviction, just like the jury findings it articulates. There is also no indication that the trial court impermissibly relied on the statement of facts from that opinion or any other. To the contrary, the trial court correctly recognized that it was "not supposed to do fact-finding at this juncture."

To the extent appellant is referring to *Rangel*, we agree that the unpublished opinion concerning a section 1172.6 petition filed by appellant's codefendant is not part of the record of conviction in appellant's case. However, the opinion served as an illustration of the People's substantive argument that appellant was ineligible for relief as a matter of law due to the procedural history of the case as detailed in *Gonzalez*. Close inspection of the court's ruling indicates that the court did not rely on *Rangel* per se, but rather the underlying holding of *Gonzalez* quoted therein.

11

Appellant contends that reliance was error under *Harden*, *supra*, 81 Cal.App.5th 45, case law she did not present to the trial court below.  In *Harden*, defendant Harden, who had been convicted of first degree murder after a trial in which the jury was instructed on the felony murder rule, filed a section 1172.6 petition asserting that she could no longer be convicted of murder.  She attached to her petition a declaration stating that she did not kill anyone and instead entered the victims' home through an open door, "saw 'what looked like a man sleeping on the couch,' and 'crept in and stole various items of property.'" (*Harden*, *supra*, 81 Cal.App.5th at pp. 48-49.)  The trial court denied her petition at the prima facie stage.  In doing so, it "[q]out[ed] several paragraphs from the factual background" in the appellate opinion resolving Harden's direct appeal and "concluded that Harden's declaration was 'completely inconsistent' with trial testimony showing '[Harden] as the killer, not anyone else.'" (*Id.* at p. 49.)  The Court of Appeal initially affirmed the ruling, noting that the direct appellate opinion had "determined there was insufficient evidence to sustain a finding that Harden's role was anything other than [the victim's] actual killer." (*Id.* at p. 50.)  The court "concluded this ruling was law of the case, and thus precluded Harden from asserting otherwise at any subsequent hearing" on her section 1172.6 petition.  (*Ibid.*)  The court subsequently granted Harden's petition for rehearing and received additional briefing on the law of the case doctrine.  (*Ibid.*)

In that briefing, Harden argued that "law of the case cannot be invoked where there is a '"substantial difference in the evidence"' on retrial of the particular issue." (*Harden*, *supra*, 81 Cal.App.5th at p. 50.)  She "acknowledge[d] that if at a hearing

12

under subdivision (d) of [former] section 1170.95, the evidence material to her role in the murder were substantially the same, then law-of-the-case principles would compel the same legal conclusion to be drawn, i.e., that she was the actual killer. But if the evidence were materially different on that issue, Harden maintains that law of the case would not apply." (*Ibid.*) The Court of Appeal agreed that "the law-of-the-case doctrine cannot conclusively establish disentitlement" at the prima facie stage of a section 1172.6 petition. (*Ibid.*) The court reasoned that it is "impossible to know what the evidence will ultimately be at an evidentiary hearing that has not yet occurred." (*Ibid.*) It ultimately affirmed the order denying Harden's petition on other grounds. (See *id.* at pp. 52-58.)

Appellant argues that under *Harden*, there are no circumstances under which the law of the case doctrine may be applied at the prima facie review of a section 1172.6 petition. However, *People v. Medrano* (2024) 98 Cal.App.5th 1254, 1264 (*Medrano*), cited by respondent, persuasively concluded that "[t]he holding in *Harden* should be limited to prohibiting application of the law of case doctrine at a prima facie hearing where, as in *Harden*, the appellate court's prior determination concerned the sufficiency of the evidence at the petitioner's trial." (*Ibid.*) *Medrano* found it appropriate to apply the law of the case doctrine where it was concerned not with "an appellate court's prior determination of the sufficiency of the evidence at appellant's trial" but rather "with the effect of the jury's finding that appellant was guilty of both first degree murder and conspiracy to commit murder." (*Ibid.*) The court found that "the key distinction" from *Harden* was that "[a]t a section 1172.6, subdivision (d) evidentiary hearing, appellant could not introduce

13

new evidence that would affect the validity of the principle of law enunciated" in the direct appellate opinion. (*Ibid.*) It explained that "the petitioner in *Harden* theoretically could have introduced new evidence to controvert the appellate court's prior determination that, based on the evidence introduced at trial, she must have been the actual killer" (*ibid.*), whereas the appellant in *Medrano* "cannot relitigate" the pertinent issues concerning jury instructions and findings. (*Id.* at p. 1265.)

Appellant does not address *Medrano* in her reply brief, and we find it more closely analogous to the case at bar than *Harden*. As in *Medrano*, the direct appellate opinion here contains procedural history and legal analysis—not factual findings or conclusions regarding the sufficiency of the evidence— that foreclose relief. Specifically, the court in *Gonzalez* concluded that the jury necessarily rejected the natural and probable consequences doctrine in favor of a still-valid direct aiding and abetting theory. This conclusion was one of law based on the instructions and verdict and accordingly may be considered law of the case in the section 1172.6 context. (See *Medrano, supra,* 98 Cal.App.5th at pp. 1264-1265; see also *People v. Campbell* (2023) 98 Cal.App.5th 350, 371-375 [declining to apply law of the case doctrine in section 1172.6 context where the point at issue was "heavily fact- and evidence-based"].)

Appellant contends the law of the case doctrine cannot apply for another reason: the direct appellate opinion "did not address the actus reus component at all; instead, it merely found sufficient evidence of intent to kill," and that is insufficient to foreclose relief under *Curiel, supra,* 15 Cal.5th 433. We are not persuaded.

14

In *Curiel*, the Supreme Court considered "the effect of the jury's true finding on the gang-murder special circumstance, specifically its finding that Curiel intended to kill, on his ability to state a prima facie case for relief" under section 1172.6. (*Curiel*, *supra*, 15 Cal.5th at pp. 440-441.) It concluded that "the jury's intent to kill finding was properly given preclusive effect in the resentencing proceedings," but held it was improper for the trial court to deny the petition at the prima facie stage based solely on that finding because a "finding of intent to kill does not, itself, conclusively establish that Curiel is ineligible for relief." (*Id.* at p. 441.) The Court reasoned that the section 1172.6 petition "put at issue all the elements of murder under current law," including mens rea and actus reus, and a "finding of intent to kill, viewed in isolation, establishes neither." (*Ibid.*) Specifically, a finding of intent to kill does not establish that an aider and abettor knew that the perpetrator intended to commit the fatal act, intended to aid the perpetrator in the commission of that act, knew that the act was dangerous to human life, or acted in conscious disregard of human life, all of which are required to establish direct aiding and abetting liability. (*Curiel*, *supra*, at p. 463; see also *id.* at pp. 466-467.) As an example, the court observed that "a defendant could act with intent to kill but at the same time believe the actual perpetrator could never risk harm to another human being—and be genuinely surprised when the actual perpetrator commits a life-endangering act." (*Id.* at p. 470.) The court recognized that such a scenario, in which a defendant would be liable for murder under the natural and probable consequences doctrine but not a direct aiding and abetting theory, likely occurs in "a 'very small set of cases.'" (*Ibid.*) However, it cautioned that "the question is not whether it

15

is *likely* a defendant could have felt and acted in such a way, but whether the court's jury instructions foreclose that possibility *as a matter of law*." (*Ibid.*, emphases in original.)

Thus, to deny relief at the prima facie stage under *Curiel*, "we must be confident the jury *necessarily* found the actus reus [and mens rea] required for direct aiding and abetting murder. That is, regardless of the facts, the jury must have made the required finding based on the instructions provided by the trial court." (*Curiel, supra,* 15 Cal.5th at p. 467, emphasis in original.) The analysis depends on the specific jury instructions given and findings made in a particular case: "jury instructions in other cases might be materially different, and they might have required different factual findings by the jury." (*Id.* at p. 471.)

Appellant contends the jury's guilty verdict on the conspiracy to commit murder count is insufficient to foreclose eligibility for relief at the prima facie stage under *Curiel* because it "did not include findings that appellant personally committed the attempted murders or was present when the attempted murders were committed." She does not clarify how the absence of these particular findings undermines convictions based on the still-valid theory of direct aiding and abetting, which does not require that the petitioner be the actual killer or be present at the scene. (See *Curiel, supra,* 15 Cal.5th at p. 463 [stating liability requirements for aiding and abetting express and implied malice murder]; see also *People v. Reyes* (2023) 14 Cal.5th 981, 992.)

Appellant further asserts that a person "may enter into a conspiracy to commit murder, and be convicted of conspiracy, without actually committing murder." She contends that may have happened in this case, albeit with regard to the attempted

16

murder counts, because the conspiracy instruction the jury received contained the same error as the instruction given in *Whitson*, *supra*, 79 Cal.App.5th 22.  We disagree.

The crime of conspiracy generally has four elements: "(1) the existence of an agreement between at least two persons; (2) the specific intent to agree to commit an offense; (3) the specific intent to commit the offense that is the object of the agreement; and (4) an overt act in furtherance of the conspiracy, which may be committed by any conspirator."  (*People v. Ware* (2022) 14 Cal.5th 151, 163 (*Ware*).)  The prosecution accordingly must prove two distinct but closely related mens rea elements: "the specific intent both to agree to the conspiracy and to commit the object offense."  (*Id.* at p. 164.)  Where the object offense is murder, it "'requires a finding of unlawful intent to kill, i.e., express malice'" and "'is necessarily conspiracy to commit premeditated and deliberated first degree murder.'"  (*Id.* at p. 167; see also *Whitson*, *supra*, 79 Cal.App.5th at pp. 31-32.)  Thus, where a jury has been properly instructed that conspiracy to commit murder requires an intent to commit murder, its guilty finding on the conspiracy may preclude resentencing relief for the underlying murder or attempted murder conviction.  (*Whitson*, *supra*, 79 Cal.App.5th at p. 32.)

In *Whitson*, the jury was not so instructed.  The court used the CALJIC pattern instructions but, "for reasons unknown … the trial court struck the language in the pattern instruction for CALJIC No. 6.10 that would have instructed the jury that it was required to find that Whitson intended to commit murder" in addition to intending to agree to the conspiracy.  (*Whitson*, *supra*, 79 Cal.App.5th at p. 33.)  The court concluded that the omission precluded it from determining that Whitson was ineligible for

17

section 1172.6 relief at the prima facie stage.  (*Ibid.*)  Appellant contends the "same flawed instruction was given in this case," but that is inaccurate.  Here, the trial court instructed the jury on conspiracy with a modified version of CALCRIM No. 563.  The instruction as given required the jury to find that appellant intended to agree and did agree to join to the conspiracy to kill and that she "and one or more of the other alleged members of the conspiracy intended that one or more of them would intentionally or unlawfully kill."  The instruction also referred the jury to the instruction on the object offense of murder, CALCRIM No. 520, which correctly instructed the jury on the union of actus reus and mens rea, including "a state of mind called malice aforethought."  Thus, in convicting appellant of conspiracy to commit murder, the jury necessarily found she joined a conspiracy that had murder as its object, was aware of the actual killers' intent,  and personally intended to kill.  She could not have been convicted of conspiracy to murder or the resultant attempted murders based on imputed malice.  (See *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 871.)  The trial court did not err or violate appellant's due process rights by denying the petition.

## DISPOSITION

The trial court order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:


CURREY, P. J.                                        MORI, J.


18